**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SAMUEL P. MATHEW M.D., Plaintiff, | ) | |
| v. | ) | Case No. |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, and PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendants. | ) | JURY TRIAL DEMANDED |

**COMPLAINT**

NOW COMES Plaintiff, SAMUEL P. MATHEW M.D., by his attorneys, Bradley Wartman and Peter Andjelkovich, and complaining against the Defendants, UNUM LIFE INSURANCE COMPANY OF AMERICA and PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY states as follows:

**Jurisdiction and Venue**

1. At issue in this case is Dr. Mathew's entitlement to benefits under a group long term disability insurance policy (number 100086, claim number 6680998, **Exhibit A** ("Group Policy")) issued by Defendant Unum Life Insurance Company of America ("Unum") for the benefit of certain employees of Intra-Hearts Service Corporation and benefits under an individual disability income policy (number 06-4109325, claim number 52-04109325-001, **Exhibit B** ("Ind. Policy")) issued by Defendant Provident Life and Accident Insurance Company ("Provident").

2. Jurisdiction of this Court as to the claims against Unum involving the Group Policy is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. §§ 1132(a)(1)(B), (e)(l) and(f), which provides district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan.

2. Jurisdiction of this Court over the claims against Unum may also be based upon 28 U.S.C. §1331, which gives the district courts jurisdiction over actions that arise under the laws of the United States.

3. Jurisdiction over Plaintiff's state law breach of contract and bad faith claims brought against Provident involving Ind. Policy coverage is proper under 28 U.S.C. §1367(a), which gives the district courts supplemental jurisdiction over claims which are sufficiently related to the original jurisdiction action that they form part of the same case or controversy under Article III of the United States Constitution.

4. Jurisdiction over all of Dr. Mathew's claims are proper under 28 U.S.C. §1332(a) since there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Plaintiff is a resident and citizen of the State of Illinois; Unum is a corporation duly organized and existing under the laws of the State of Maine with its principal place of business in Portland, Maine and is therefore a citizen of the State of Maine; and Provident is a corporation organized under the laws of the State of Tennessee with its principal place of business in Chattanooga, Tennessee and is therefore a citizen of the State of Tennessee.

6. Venue is proper in the Northern District of Illinois. 29 U.S.C. § 1132(e)(2), 28 U.S.C. § 1391(b).

## Nature of Action

*A. Policy Terms.*

7. The Ind. Policy provides a monthly total disability benefit of $15,000.00 (Ex. B,

p. 3) while the Group Policy provides a monthly benefit of sixty percent (60%) of the basic monthly earnings with a maximum monthly benefit of $6,000.00 (Ex. A, LC-CR-RIDER) which is reduced if a claimant continues to earn more than 20% of the indexed pre-disability earnings. Ex. A, p.8.

8. Total disability benefits awarded under the Ind. Policy before age 60 continue *for life* and residual disability benefits awarded under the Ind. Policy before age 61 continue to the claimant's 65th birthday (Ex. B, p. 3) whereas Group Policy benefits awarded prior to age 60 continue to the claimant's 65th birthday. Ex. A, p. 7.

9. Both disability policies contain different definitions of total disability with the Ind. Policy being in relevant part as "not able to perform the substantial and material duties of Your Occupation" and treatment by a physician for the condition causing the disability. Ex. B, p. 4.

10. The Group Policy generally states that disability benefits are payable when a claimant is disabled due to sickness or injury which requires regular attendance with a physician (Ex. A, p.7) with the Rider further defining Disability as "because of an injury or sickness":

1. the claimant cannot perform each of the material duties of "your" regular occupation; <u>*and*</u>

2. after 24 months, the claimant cannot perform each of the material duties of any gainful occupation for which he is reasonably qualified;

<u>*or*</u>

3. the claimant, if unable to perform all of the material duties of "your" regular occupation on a full-time basis, is-

    (a) Performing at least one of the material duties of his or her regular occupation or another occupation; <u>*and*</u>

    (b) Currently earning at least 20% less per month than his or her indexed pre-disability earnings due to that same injury or sickness.

Ex. A, LC-CR-RIDER.

11. On August 10, 2012, Unum notified Dr. Mathew that the Group Policy Disability definition would change effective May 29, 2013 but because Unum's termination of the claim (Exhibit E) was based upon Dr. Mathew's 2012 earnings, the purported plan amendment is not applicable to the Unum Group Policy benefits termination.

12. Residual Disability under the Ind. Policy is defined as an injury or sickness that renders the claimant unable to perform "one or more" substantial and material daily business duties (or unable to perform usual daily business duties for as much time as it would normally take) and a "Loss of Monthly Income in Your Occupation" of 20%. Ex. B, p. 9.

13. Under the Group Policy, "partial disability" claimants who are disabled and earn more than 20% of pre-indexed disability earnings have their benefits reduced for post-disability earnings according to a prescribed formula (Ex. A, pp. 7-8) but this "partial disability" definition explicitly does not apply when the claimant satisfies the third and alternative Rider disability definition. Ex. A, LC-CR-RIDER.

*B. Disability Claims.*

14. Dr. Mathew was born in 1951 and his date of disability was reported as March 1, 2011 when he was 59 years of age.

15. Dr. Mathew's is a licensed medical physician having first acquired his physician license in 1982.

16. Until 2008, Dr. Mathew was regularly performing invasive cardiology procedures at various hospitals. In 2008, Dr. Mathew stopped performing invasive cardiology procedures because of his disabling medical conditions and sometime thereafter, allowed his hospital privileges to lapse and limited his cardiology duties to clinical cardiology functions only that

excluded invasive cardiology procedure.

17. Sometime after limiting his cardiology duties to clinical cardiology functions, Dr. Mathew's income reduced significantly largely because his client base was limited to treating existing patients and emergency room patient referrals which once made up a substantial portion of Dr. Mathew's new patient referrals substantially diminished because he was no longer performing invasive cardiology procedures.

18. On July 7, 2011, Dr. Mathew submitted a claim for disability under both the Ind. Policy and Group Policy declaring a date of disability as March 1, 2011 and listing the following disabling medical conditions supported by physician statements: diabetes, neuropathy, cervical radiculopathy, spinal stenosis, annular, rotor cuff, and meniscus tears, and right foot sinus tarsi syndrome, degenerative joint disease, and sesamoiditis.

19. The pain and discomfort from these disabling medical conditions severely limit Dr. Mathew's ability to perform the many physical demands required of his physician occupation such as standing for long periods of time and performing medical procedures pain-free.

20. At the time of submitting his disability claims, Dr. Mathew's work hours were reduced to a part-time status where he worked approximately fifteen hours per week and with duties that largely consisted of supervising other medical technicians and staff performing non-invasive procedures whereas prior to becoming disabled, Dr. Mathew often worked eighteen hour days and sometimes seven days per week.

21. After discovering that Dr. Mathew was no longer performing invasive procedures, Unum converted the disability claims to a total disability from a partial disability claim for the period following October 1, 2011.

22. In an award letter dated October 21, 2011, Unum approved total disability awards under both the Ind. Policy and the Group Policy (**Exhibit C**) even though Defendants' report dated October 25, 2011notes that Dr. Mathew was then still working on a part time basis.

23. From May 30, 2011 through October 1, 2011, Dr. Mathew was paid residual disability benefits under both policies and beginning October 1, 2011 through February 1, 2013, Defendants paid Dr. Mathew total disability benefits.

*C. Unum's Disability Benefits Termination.*

24. In its letter dated January 31, 2013, Unum closed both of Dr. Mathew's benefits claims and terminated payments to Dr. Mathew inaccurately claiming that Dr. Mathew failed to timely provide previously requested documents. See **Exhibit D**.

25. On March 6, 2014, Unum formally denied Dr. Mathew's Ind. Policy and Group Policy claims in separate letters. **Exhibits E** and **F**.

26. Unum claimed for the first time in the Ind. Policy denial letter that Dr. Mathew was Residually Disabled as defined under the policy since the original March 1, 2011 disability date (Ex. F, p.1) even though the award granting Dr. Mathew disability benefits were for total disability benefits. Ex. C, p. 2.

27. In the Ind. Policy denial letter, Unum also claimed that Dr. Mathew had a Loss of Income of 55.69% and that by paying Dr. Mathew a total disability award instead of a Residually Disabled award following October 1, 2011, Dr. Mathew was overpaid by $126,700.75. Ex. F, p. 1.

28. Unum claimed in the Group Policy denial letter that Dr. Mathew did not have the required 20% loss of income to qualify for any disability benefits and therefore, he was overpaid $114,000.00 in benefits. Ex. E, p. 2.

29. In determining that Dr. Mathew was Residually Disabled under the Group Policy, Unum failed to determine whether Dr. Mathew qualified for total disability benefits under both the first and second of the two alternative disability definitions contained in the Rider.

30. Dr. Mathew was unable to perform each of the material duties of his ("your") regular occupation because of an injury or sickness and after 24 months, he could not perform each of the material duties of any gainful occupation and as such, satisfied the first of the two alternative Group Policy Disability definitions. Ex. A, LC-CR-RIDER.

31. Under the second alternative Group Policy Disability definition, it is undisputed that although Dr. Mathew is performing at least one of the material duties of his regular occupation, as the March 6, 2014 Unum letter concedes (Ex. F, p. 1), Dr. Mathew was earning more than 20% less per month than his indexed pre-disability earnings. Ex. A, LC-CR-RIDER. Having satisfied this portion of the Disability definition, by the explicit policy terms, the "partial disability" definition does not apply to Dr. Mathew's Group Policy claim.

32. Dr. Mathew also meets the Ind. Policy Total Disability definition because he was "not able to perform the substantial and material duties of [his] Your Occupation" and was being treated by a physician for the condition causing the disability. Ex. B, p. 4.

33. The fact that Dr. Mathew was earning income at a substantially reduced amount is of no consequence in determining whether he was totally disabled under the Ind. Policy because the policy disability definition does not take into account or consider the claimant's income at the time of applying the total disability definition.

34. Instead, the policy terms state that the Monthly Benefit for Total Disability of $15,000.00 per month will be paid from the date of the Total Disability following the Elimination Period and will continue for as long as the claimant remains totally disabled during

the benefit period (Ex. B, p. 6) with no provision stating Defendants will pay a residual benefits in lieu of total benefits if Unum concludes a claimant also meets the Residual Disability definition.

35. On August 25, 2014, Dr. Mathew submitted a timely appeal of Defendants' denial of his Ind. Policy and Group Policy disability claims pursuant to 29 U.S.C. §1133 and 29 C.F.R. §2560.503-1 challenging the basis of the termination of benefits which failed to properly apply in an unbiased manner the policies' total disability definitions and inaccurately calculated Dr. Mathew's pre- and post-disability incomes.

**COUNT I - ERISA §502(a)(1)(B)**

1-35. Dr. Mathew realleges and fully incorporates herein paragraphs 1-35 of the preceding allegations as paragraphs 1-35 of Count I of his Complaint.

36. The evidence submitted to Unum conclusively establishes that Dr. Mathew was totally disabled under the Group Policy from March 1, 2011 to the present, and he was not limited in the award to residual disability benefits during this period, and that Unum inaccurately calculated in its favor Dr. Mathew's post-March 1, 2011 disability income.

37. Defendant Unum should be estopped from reversing its declaration that Dr. Mathew was eligible for total and full disability benefits under the Group Policy and using its discretionary conduct to determine both Dr. Mathew's eligibility for benefits and the amount it was obligated to pay because of Unum's inherent conflict of interest that should not afford any deference to Unum's administrative denial of benefits.

38. Dr. Mathew is entitled to full disability benefits under the Group Policy from March 1, 2011 to the present plus interest that has accrued thereon, and is entitled to a declaration of rights that his benefits remain payable thereafter so long as he continues to meet

the disability policy's terms and conditions.

WHEREFORE, Dr. Mathew prays for the following relief:

A. That the Court enter judgment in Dr. Mathew's favor and against Defendant Unum and that this Court order Unum pay all disability benefits owed to him under the Group Policy;

B. That the Court order Defendant Unum to pay Dr. Mathew prejudgment interest on all benefits due and owing to him prior to the date of judgment;

C. That the Court declare that Dr. Mathew is entitled to receive all disability benefits in the future subject to his fulfilling the Group Policy's terms and conditions for eligibility;

D. That the Court award Dr. Mathew his attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g); and

E. That Dr. Mathew recover any and all other relief that this court deems equitable and just.

**COUNT II - BREACH OF CONTRACT**

1-35. Dr. Mathew realleges and fully incorporates herein paragraphs 1-35 of the preceding allegations as paragraphs 1-35 of Count II of his Complaint.

36. The evidence submitted to Provident and Unum establishes that Dr. Mathew is and was eligible for the maximum disability benefit under the Ind. Policy since Dr. Mathew timely provided Defendants all documents and information requested to continue to allowing him to receive the total disability award beyond February 1, 2013.

37. Defendants should be estopped from reversing its declaration that Dr. Mathew was eligible for total and full disability benefits under the Ind. Policy.

38. Dr. Mathew meets the Ind. Policy definition of total disability for all months

following his March 1, 2011 disability date and Dr. Mathew's dramatically reduced post-disability earnings do not reduce the total disability monthly benefit payable to him which Defendants incorrectly calculated.

39. As a direct and proximate result thereof, Provident owes Dr. Mathew all disability benefits, as well as interest, under the Ind. Policy since February 1, 2013 to the present and none of the benefits paid to him before that date were improperly paid.

39. Dr. Mathew is entitled to a declaratory judgment declaring his eligibility for full disability benefit payments from March 1, 2011 and for all period of time hereafter so long as he continues to meet the terms and conditions of the policy.

WHEREFORE, Dr. Mathew prays for judgment against Provident and Unum in an amount equal to all accrued benefits due under the Ind. Policy through the date of judgment plus interest thereon, a declaration that monthly disability benefits are to continue so long as Dr. Mathew continues to meet the terms and conditions under the policy, as well as all other relief that this court deems equitable and just.

**COUNT III - BAD FAITH AND UNREASONABLE AND VEXATIOUS CONDUCT**

1-35. Dr. Mathew realleges and fully incorporates herein paragraphs 1-35 of the preceding allegations as paragraphs 1-35 of Count I of his Complaint.

36. Under 215 ILCS 5/155, Illinois allows the court to assess penalties of up to $60,000.00 plus attorneys' fees against insurance companies that unreasonably and vexatiously refuse or delay payments of amounts due under a policy.

37. Provident's termination of Dr. Mathew's disability benefits well over a year after approving his award of total disability benefits under the Ind. Policy is vexatious and unreasonable since Dr. Mathew is clearly eligible for benefits and Provident's basis for denying

benefit is unsupported by the facts or the policy terms.

WHEREFORE, Dr. Mathew prays that Provident be assessed the maximum penalty allowed under 215 ILCS 5/155, that Provident be ordered to pay Dr. Mathew's attorneys' fees and court costs, as well as such other relief that this court deems equitable and just.

Respectfully submitted,
**Samuel P. Mathew M.D.**

By: /s/Bradley Wartman
One of his attorneys.

Bradley Wartman, Esq.
Peter Andjelkovich, Esq.
Peter Andjelkovich & Associates
Attorneys for Samuel P. Mathew M.D.
135 S. LaSalle Street, Suite 3950
Chicago, IL 60603
(312) 782-8345